UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNETH ADAM MARSHALL, )<br>      Plaintiff       )<br>                               )<br>vs.                           )<br>                               )<br>STAN KNIGHT, *et al.*,     )<br>      Defendants  )  | CAUSE NO. 3:03-CV-460 RM |

## OPINION AND ORDER

Kenneth Marshall, a prisoner committed to the Indiana Department of Correction ("IDOC"), submitted a complaint under 42 U.S.C. § 1983, alleging violation of his federally protected rights while he was confined at the Miami Correctional Facility ("MCF"). This case is before the court on the plaintiff's amended complaint, which names as defendants MCF Superintendent Stan Knight, Law Library Supervisor Robert Moore, Counselor Mrs. Reynolds, Administrative Assistant Chris Johnson, and Correctional Lieutenant McCoy.

Defendants Knight, Moore, Reynolds, and Johnson move for summary judgment, pursuant to FED. R. CIV. P. 56, solely on the question of whether Mr. Marshall exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a); Mr. Marshall has responded. For the reasons that follow, the court grants the moving defendants' summary judgment motion in part and denies it in part.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot

> rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
>    . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio *Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

## I. PROCEDURAL MATTERS

On October 26, 2006, Mr. Marshall filed a response to the defendants' summary judgment motion. The defendants filed their reply on October 27. Mr. Marshall filed a second response on November 6, 2006. The defendants move to strike Mr. Marshall's second submission.

The court will deny the motion to strike Mr. Marshall's second submission, but considering the second submission has no impact on the court's ruling on the defendants' summary judgment motion. Mr. Marshall's argument that Supt. Knight made the grievance procedure unavailable regarding access to the law library is spelled out in sufficient detail in his first response — and indeed as far back as the amended complaint and its attachments. On the other hand, the the arguments in Mr. Marshall's November 6 submission are unpersuasive on the question of whether the IDOC grievance procedure was unavailable to him in

2

regard to his retaliation claims or on his claim that he substantially complied with the requirements of § 1997e(a).

In their reply, the defendants object to the plaintiff's exhibits, asserting that they are not properly authenticated or identified. The most significant of these submissions is exhibit 1,[1] attached to his response of October 26, which is the same as exhibit 1 attached to his response of November 6, and exhibit 6 attached to the amended complaint. This document purports to be a memorandum to "All Offenders of Miami Correctional Facility," from "Stan Knight, Superintendent Miami Correctional Facility," dated April 21, 2003, on the subject of "Law Library Access." The memorandum is stamped, at the top: "TO BE POSTED." The body of Supt. Knight's memorandum explains that access to the MCF law library would be diminished for the foreseeable future, and states that "We anticipate that this issue might be the source of grievances filed by offenders. Since staff time is limited, a copy of this memorandum, rather than a response from a particular staff member will be the response to any grievance."

The identity and authenticity of this document is provisionally clear on its face. It is an official memorandum from the Superintendent of the facility to all inmates. Mr. Marshall, as an inmate at the MCF, was one of the recipients. The memorandum was to be posted, making it available to all prisoners and employees.

---

[1] Exhibits 2 and 3 are affidavits, exhibits 4 and 5 purport to be documents from Mr. Marshall's inmate files. The exhibits attached to the plaintiff's second response include exhibits already submitted to the court and new documents purporting to be official documents or documents form Mr. Marshall's file The defendants do not assert that any of the documents that purport to be official documents or documents from Mr. Marshall's file are forgeries.

Supt. Knight is a defendant, and if it is authentic this document cannot come as a surprise to him. If it is not authentic, the court would expect a response from Supt. Knight denying authorship and asserting that it is a forgery. The defendants do not challenge the authenticity of the memorandum, so the court will consider it in deciding the question of whether Mr. Marshall had an available grievance remedy within the meaning of § 1997e(a). The court will also consider the affidavits and other documents submitted by Mr. Marshall, but will not consider inadmissible evidence contained within those exhibits.

## II. EXHAUSTION OF GRIEVANCES

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. Booth v. Churner, 532 U.S. 731 (2001); Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002), quoting Porter v. Nussle, 534 U.S. 516, 122 (2002). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

In support of their summary judgment motion, the defendants submit Grievance Specialist Amy Clark's declaration that the IDOC had a grievance

4

program in effect while Mr. Marshall was confined at the MCF, that the issues Mr. Marshall presented in his amended complaint were grievable, and that MCF records don't contain any grievance filed by Mr. Marshall dealing with access to the law library or retaliation. Because the defendants met their initial obligation under FED. R. CIV. P. 56, the burden falls upon Mr. Marshall to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, to allow a factfinder to decide in his favor the questions of whether the facility had an available remedy, and if so whether he availed himself of that remedy. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## A. LAW LIBRARY ACCESS CLAIMS

Mr. Marshall asserts that Supt. Knight's memorandum of April 21, 2003, rendered the IDOC's grievance procedure unavailable for prisoners who were denied access to the MCF law library. The defendants argue in their reply that the memorandum anticipates that, "offenders will not be scheduled for more than one session per day . . ." in the law library, so "the memorandum does not address the issue of denial of access to the law library but rather the reduction of sessions. Accordingly, the statements contained in the memorandum do not put availability at issue."

The defendants' reply, however, misreads the complete sentence from Supt. Knight's memorandum, which reads in its entirety: "Therefore, effective immediately, offenders will not be scheduled for more than one session per day until all offenders are given timely access to the library, i.e. within one week of their request." Thus the memorandum does not guarantee, as the defendants suggest, that inmates will be reduced to one session a day in the law library, or

5

even one session a week — rather the memorandum concedes that, until some unspecified future date, some inmates may not get law library access for weeks at a time. Nor does the memorandum suggest that law library officials will attempt to "triage" law library requests so that those with the most urgent need will get to the law library first.

Superintendent Knight's memorandum requires subordinate officials to treat grievances stating that inmates had not been able to get in to the law library at all the same way they treat grievances from inmates complaining about only getting into the law library once a day. Accordingly, the memorandum addresses the denial of access to the law library, not just the reduction of inmate access — and the court will turn to the question of whether this memorandum rendered the grievance procedure "unavailable" for inmates grieving law library access at the MCF.

A prisoner must "complete a prison administrative process that could provide some sort of relief on the complaint stated . . . ." Booth v. Churner, 532 U.S. at 734. "The Supreme Court has also noted that corrective action taken in response to a grievance might satisfy the prisoner, thus obviating the need for the litigation, or alert prison authorities to an ongoing problem that they can correct." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), citing Porter v. Nussle, 534 U.S. at 524-525. But even when a prison has an "available remedy," prison officials, by their own actions, may make that remedy unavailable for specific grievances. Dole v. Chandler, 438 F.3d at 811-813; Thornton v. Snyder, 428 F.3d 690, 696 (7th Cir. 2005):

>Unlike here, there was in Booth still the possibility of some relief that prison officials could have offered that might have satisfied the inmate. . . .. The Court made it a point to state that in the case before it, "Neither [party] denies that some redress for a wrong is presupposed by the statute's requirement of an 'available' 'remedy[y],'" and then explicitly noted, Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust."

Thornton v. Snyder, 428 F.3d at 696, quoting Booth v. Churner, 532 U.S. at 734.

The IDOC grievance policy allows inmates to grieve denial of access to the law library. But Superintendent Knight's memorandum of April 21, 2003, took away MCF inmates' opportunity to receive any corrective relief from grievances dealing with law library access at that facility. Supt. Knight's memorandum provides that grievances dealing with access to the law library will not be investigated individually in the interest of saving "limited" staff time. Under the terms of this memorandum, prison officials handling grievances dealing with law library access have no authority to act on the subject of the complaint, and must do only one thing: send the grievant "a copy of this memorandum." Thus, the grievance procedure, Supt. Knight can be found to have modified it, does not allow any sort of "relief that prison officials could have offered that might have satisfied the inmate."[2] Thornton v. Snyder, 428 F.3d at 696. Supt. Knight's memorandum allowed MCF officials "no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." Thornton v. Snyder, 428 F.3d at, 696, quoting Booth v. Churner, 532 U.S. at 734.

---

[2] Because Superintendent Knight's memorandum was "posted" for all to see, sending a prisoner a copy of the memorandum cannot be considered "corrective relief." Moreover, an inmate who was satisfied by the memorandum's explanation of why he couldn't go the law library simply would not have filed a grievance in the first place.

7

Where a grievance might "alert prison authorities to an ongoing problem that they can correct," Dole v. Chandler, 438 F.3d at 809, citing Porter v. Nussle, 534 U.S. at 525, a grievance system might remain "available." But MCF officials already were aware of the problem at the law library; Superintendent Knight even states in his memorandum that "we would anticipate that this issue might be the source of grievances filed by offenders." Because MCF officials were aware of the problem — and anticipated grievances, the fact that prisoners might file grievances could do nothing to alert them to the existence of the problem.

Giving Mr. Marshall the benefit of the inferences to which he is entitled under Celotex Corp. v. Catrett, he has sufficiently established that the IDOC grievance procedure was unavailable for grievances dealing with law library access at the MCF during the period he alleges he was denied access to the law library. Supt. Knight may, of course, establish a policy that grievance officials will not investigate the particulars of a prisoner's grievance or afford him any corrective remedy — but if he does so, he may not then argue that inmates have not exhausted their administrative remedies. Because Supt. Knight can be found to have established a policy that rendered the grievance procedure unavailable for grieving law library access, the defendants cannot rely on § 1997e(a) to obtain the dismissal of this portion of the amended complaint.

## B. RETALIATION CLAIMS

In his amended complaint, Mr. Marshall asserts that some or all of the defendants retaliated against him for engaging in protected Constitutional activities. Grievance Specialist Clark states in her declaration that "(a) complaint that an offender was retaliated against because [he] had participated in

8

constitutionally protected activity was an issue that could have been grieved." (Clark declaration at p. 3.). Ms. Clark states that the MCF grievance records do not contain any grievances filed by Mr. Marshall dealing with retaliation, and he does not state that he filed a formal grievance on this question.

Mr. Marshall asserts that the grievance procedure would not allow him to grieve classification or disciplinary decisions. But his complaint is that prison officials retaliated against him. Had Mr. Marshall filed a grievance stating his retaliation claim and the facts upon which he relied to support that claim and the defendants accepted it, he could grieve prison officials' actions even if they may include an adverse classification decision. If, on the other hand, grievance officials rejected the grievance because they believed he was contesting a classification decision, the court might well agree that he had no available remedy to present his retaliation claims.

"No one can know whether administrative requests will be futile; the only way to find out is to try." Perez v. Wisconsin Dept. of Corrections, 182 F.3d at 537. Unlike his law library access claims, where Supt. Knight's memorandum establishes the futility of filing a grievance, the only way to know if Mr. Marshall's retaliation claims were grievable was for him to file a grievance and have it accepted — or rejected for subject matter jurisdiction.

Mr. Marshall also asserts that he contacted several IDOC officials in regard to retaliation, including defendant Johnson, MCF Internal Affairs, and the IDOC Ombudsman. But even assuming that these statements are true, these contacts would not constitute the functional equivalent of filing a formal grievance, nor would it excuse Mr. Marshall from filing a grievance. In Hock v. Thipedeau, 238

9

F.Supp.2d 446, 448 (D.Conn. 2002), the court initially found that a prisoner who wrote several letters to prison officials complaining of a guard's conduct, which resulted in a departmental investigation of the incident and the resignation of the guard, had "satisfied the exhaustion of administrative remedy requirement of Section 1997e(a)." But on reconsideration, the court concluded that Booth v. Churner and Porter v. Nussle required prisoners to exhaust Connecticut's administrative inmate grievance procedure. Hock v. Thipedeau, 245 F.Supp.2d 451, 456-457 (D.Conn. 2003). The court held that:

> when an inmate makes no attempt to initiate and follow to the end prescribed grievance procedures, any responsive action taken by the DOC to resolve a problem brought to its attention, regardless of its source . . . could not be the basis for determining that the exhaustion requirement has been satisfied.

Hock v. Thipedeau, 245 F.Supp.2d at 457.

Where a prison has a formal grievance procedure, neither the Supreme Court nor the Seventh Circuit have held that actions other than filing a formal grievance can constitute the functional equivalent of filing a grievance. Accordingly, any verbal or written complaints Mr. Marshall may have made about retaliation do excuse him from following the IDOC's administrative grievance procedure by filing a formal grievance.

### III. CONCLUSION

For the foregoing reasons, the court DENIES defendants Knight, Moore, Reynolds, and Johnson's motion to strike (docket #106) and GRANTS their motion for summary judgment directed at the question of exhaustion (docket #90) in part and DENIES it in part:

10

1. The court DENIES summary judgment on the question of law library access, and that claim remains before the court;

2. The court GRANTS the motion for summary judgment on the plaintiff's retaliation claim, and DISMISSES that claim without prejudice pursuant to 42U.S.C. § 1997e(a).

3. The court LIFTS the stay on discovery. All discovery shall be initiated by January 22, 2007, and any dispositive motions directed at the merits shall be filed by March 23, 2007.

SO ORDERED.

ENTERED: November  17 , 2006

                                       /s/ Robert L. Miller, Jr.
                                       Chief Judge
                                       United States District Court